IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


ROBERT HANKINS,                          :
                                         :
            Plaintiff                    :
                                         :
        v.                               :    CIVIL NO. 3:CV-12-2554
                                         :
COMMONWEALTH OF PENNSYLVANIA,            :    (Judge Conaboy)      FILED
ET AL.,                                  :                         SCRANTON
                                         :
            Defendants                   :                         MAR 24 2014

---

**MEMORANDUM**                                    PER_____ _____
**Background**                                    DEPUTY CLERK

    Robert Hankins, an inmate presently confined at the State Correctional Institution, Dallas, Pennsylvania (SCI-Dallas), initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. Service of the complaint was previously ordered.

    By Memorandum and Order dated January 12, 2014, this Court partially granted a motion to dismiss filed by Defendants Commonwealth of Pennsylvania; the Pennsylvania Board of Probation and Parole (Parole Board); Pennsylvania Attorney General Kathleen Kane and two Parole Board employees, Parole Supervisor Burke and Parole Agent McGinnis (Commonwealth Defendants).

    Specifically, dismissal was entered in favor of Defendants Attorney General Kane, Commonwealth of Pennsylvania, and with respect to the damages claim against the Pennsylvania Board of Probation and Parole. See Doc. 32. However, Plaintiff's claims that he was improperly denied parole consideration by Defendants Parole Board, Burke, and McGinnis were allowed to proceed. See id.

1

Also named as Defendants are the following officials at Hankins' former place of incarceration, the Rockview State Correctional Institution, Bellefonte, Pennsylvania (SCI-Rockview): Superintendent Marirosa Lamas; Counselor Melissa Reed; Deputy Superintendent Jeffrey Horton; ex-Deputy Superintendent Robert Marsh; Tim Miller; Superintendent Assistant Jeffrey Rackovan and John/Jane Doe Maintenance Department employees (Corrections Defendants).

According to the Complaint, while on a April, 2004 hunger strike during his confinement in the Special Management Unit at the State Correctional Institution, Camp Hill, Pennsylvania (SCI-Camp Hill), Plaintiff was visited by several members of the Parole Board. Despite allegedly knowing that Hankins was incoherent and physically unfit because of his lack of food intake, those unidentified Parole Board members nonetheless purportedly conducted a review regarding his parole eligibility.

The Complaint next contends that while incarcerated at SCI-Rockview in May 2011 the Plaintiff was told by his prison counselor (presumably Defendant Reed) that he was due to be seen by the Parole Board. See Doc. 1, p. 4, ¶ 5. However, because of his ongoing placement in the SCI-Rockview Restricted Housing Unit (RHU), "[i]t was made known to Plaintiff" that he was precluded under Parole Board policy from being afforded an interview.[1] Id. at ¶ 6. Hankins challenges that alleged Parole Board policy and its implementation by all Defendants on the grounds that Pennsylvania state inmates, including those held in the RHU, have a

---

1.   Hankins indicates that he was housed in the RHU for twelve (12) straight years. See id. at ¶ 6.

right to apply for parole upon the expiration of their minimum sentence and to have that application fairly considered.  Hankins concludes that the Parole Board's policy precluding RHU prisoners from parole consideration upon completion of their minimum sentence and thereafter is unconstitutional.  There is also a vague contention that the Corrections Defendants engaged in a conspiracy with the Commonwealth Defendants to prevent Hankins from receiving parole consideration via the aforementioned Parole Board policy. See id. at ¶ 12.

Plaintiff also claims that he was subjected to unconstitutional conditions of confinement at SCI-Rockview because of poor air and water quality.  Hankins generally contends that due to the improper handling and disposal of coal as a heating source, his health and safety have been placed at risk.  See id. at p. 5, ¶ 15.  He adds that the water that prisoners must use to was and rely on "is dark and murky at times with a distinct smell."  Id. at ¶ 16.  Plaintiff indicates that he is afraid to drink the water at times and it once caused him to vomit.  His final allegation is that with the exception of Counselor Reed, the Corrections Defendants have been advised of the water problem.  Hankins seeks punitive, nominal, and compensatory damages as well as injunctive relief.

Presently pending is a motion to dismiss filed by the Corrections Defendants.  See Doc. 15.  The opposed motion is ripe for consideration.[2]

---

2.  By Order dated November 13, 2013, Plaintiff's motion in opposition to the Corrections Defendants' motion to dismiss was construed as his opposing brief.  See Doc. 30.

### Discussion

Corrections Defendants claim entitlement to entry of dismissal on the grounds that: (1) their conduct in following Parole Board policy does not constitute conspiracy or violate either the Parole Act or the Eighth Amendment; and (2) a viable Eighth Amendment claim has not been stated with respect to the alleged air and water conditions at SCI-Rockview.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). A plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Id. at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ____ , 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129

4

S.Ct at 1949.  Legal conclusions must be supported by factual
allegations and the complaint must state a plausible claim for
relief.  See id. at 1950.

"Factual allegations must be enough to raise a right to
relief above the speculative level, on the assumption that all the
allegations in the complaint are true (even if doubtful in fact)."
Twombly, at 555.  The reviewing court must determine whether the
complaint "contain[s] either direct or inferential allegations
respecting all the material elements necessary to sustain recovery
under some viable legal theory."  Id. at 562; see also Phillips v.
County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to
survive a motion to dismiss, a plaintiff must allege in his
complaint "enough facts to raise a reasonable expectation that
discovery will reveal evidence of the necessary element[s]" of a
particular cause of action).  Additionally, pro se pleadings are to
be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Conspiracy**

The Complaint includes a vague assertion that a conspiracy
existed between SCI-Rockview and Parole Board officials to deny
Plaintiff the right to have his parole application considered at
the expiration of his minimum sentence.  Hankins states only that
"the D.O.C. officials and Parole agents fomulated, [sic] conspired,
and implemented a policy or practice that led to  Plaintiff's
Fourteenth Amend. Violation."  Doc. 1, p.4, ¶ 12.

Corrections Defendants argue that a viable conspiracy claim
has not been stated.  See Doc. 20, p. 5.  They note that Plaintiff
has not alleged that he actually filed a parole application and was

denied review.[3]  He has also not "identified any civil right that has been violated." Id. at p. 6.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989).  The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations." Rose, 871 F.2d at 366.  Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545.  Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. Id.; Rose, 871 F.2d at 366; Young, 926 F.2d at 1405 n.16; Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982).  Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which

---

3.  This court's January 13, 2014 Memorandum concluded, that at this juncture in the proceedings, Plaintiff has adequately alleged that he applied for parole. See Doc. 31, p. 9.

tend to show a meeting of the minds and some type of concerted activity. <u>Deck v. Leftridge</u>, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. <u>Young v. Kann</u>, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

There are no averments of fact in the Complaint that reasonably suggest the presence of an agreement or concerted activity between the Defendants. Rather, at best Plaintiff seeks to establish liability against the Corrections Defendants because they acted in accordance with Parole Board policy. Such a claim is insufficient for showing any communication or cooperation among any Defendants from which an agreement could be inferred. While Plaintiff has arguably set forth some claims of constitutional misconduct, he has not adequately alleged that those actions were the result of a conspiracy. Dismissal will be granted with respect to the claim of conspiracy.

## Parole Consideration

Hankins alleges that in May 2011 he was told by his SCI-Rockview counselor (presumably Defendant Reed) that he was due to be seen by the Parole Board. <u>See</u> Doc. 1, p. 4, ¶ 5. However, because of his ongoing placement in the SCI-Rockview Restricted Housing Unit (RHU), "[i]t was made known to Plaintiff" that he was precluded under Parole Board policy from being afforded an interview. <u>Id</u>. at ¶ 6.

A plaintiff, in order to state an actionable § 1983 civil rights claim, must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law, and (2) said conduct deprived the plaintiff of a right,

7

privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Although Plaintiff's claims that he was improperly denied parole consideration by Defendants Parole Board, Burke, and McGinnis have been allowed to proceed, there are no facts asserted showing personal involvement by the Corrections Defendants with respect to the alleged improper denial of parole review to Hankins because of his RHU confinement.  Plaintiff acknowledges that his claim is premised on a Parole Board policy not an SCI-Rockview policy.  Moreover, there are no facts alleged which could show that any Corrections Defendant was actually involved in any determination to deny or delay parole review to the Plaintiff

8

because of his RHU placement.  There is also no contention that
Hankins was unjustly placed in the RHU by a Corrections Defendant
for the sole purpose of denying him an opportunity for parole
consideration.  Finally, the vague assertion that Counselor Reed
told Hankins that he was due to be seen by parole officials simply
does not assert any constitutional misconduct by that Defendant.
Accordingly, the Corrections Defendants' request for dismissal of
the parole review related claims will be granted.

## Conditions of Confinement

The Complaint includes a sparse contention that due to the
improper handling and disposal of coal as a heating source,
Hankins' health and safety have been placed at risk "due to the air
being breathed."  Doc. 1, p. 5, ¶ 14.  Plaintiff further maintains
that the water that prisoners must use to was and rely on "is dark
and murky at times with a distinct smell."  Id. at ¶ 16.  Hankins
adds that he is afraid to drink the water at times and it once
caused him to vomit.  His final contention is that with the
exception of Counselor Reed, Corrections Defendants have been
advised of the water problem.

Corrections Defendants argue that the contentions relating
to air quality allegations cannot proceed because they are
"speculative, and conclusory and contain absolutely no factual
basis."  Doc. 20, p. 8.  They add there are no allegations that any
Corrections Defendants "had personal involvement in any water
related problems."  Id. at p. 9.

The Eighth Amendment's prohibition of cruel and unusual
punishment imposes duties on prison officials to provide prisoners
with the basic necessities of life, such as food, clothing,

shelter, sanitation, medical care and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities."  Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment.  Moreover, the focus must be on the deprivation of a particular basic necessity.  As explained in Wilson v. Seiter, 501 U.S. 294, 304-05 (1991):

> Some conditions of confinement may
> establish an Eighth Amendment violation
> 'in combination' when each would not do so
> alone, but only when they have a mutually
> enforcing effect that produces the
> deprivation of a single, identifiable
> human need such as food, warmth, or
> exercise – for example, a low cell
> temperature at night combined with a
> failure to issue blankets. To say that
> some prison conditions may interact in
> this fashion is a far cry from saying that
> all prison conditions are a seamless web
> for Eighth Amendment purposes. Nothing so
> amorphous as 'overall conditions' can rise
> to the level of cruel and usual punishment
> when no specific deprivation of a single
> human need exists.

In addition to showing conditions that pose a risk of serious harm, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind."  Id. at 298.  A prison

official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety.  See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir.  2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, under the standards set forth in Iqbal and Twombly,  in order to survive a motion to dismiss, factual allegations cannot be speculative or conclusory.  In addition, Rode requires that a complaint assert that a defendant had personal involvement in the constitutional misconduct.

Plaintiff makes a vague assertion that due to the improper handling and disposal of coal his safety has been placed at risk. There is no claim by Plaintiff has suffered any injury and there are no facts presented which could support the speculative contention that the air quality poses a risk of serious harm.[4]

Second, there are no factual allegations showing any personal involvement by any Corrections Defendant in the alleged mishandling of coal as required under Rode.  Similarly, Hankins has set forth any facts whatsoever which could support a finding of deliberate indifference.  Based on an application of the above, well settled standards to the sparse factual assertions regarding

---

4.  In an opposing brief, Hankins sets forth new factual contentions regarding emissions from trucks and other vehicles, clogged air vents; and fires on the cellblock.  None of these allegations are properly before the Court and lack relevance to his assertion of improper handling of coal.  See Doc. 26, p. 4.

the alleged mishandling of coal, this Court agrees a viable conditions of confinement claims has not been stated.  The motion to dismiss will be granted with regards to the vague, speculative, wholly conclusory coal mishandling claim.

With respect to Hankins' water quality related claims, Corrections Defendants argue only that "no allegations are made to indicate that any of them had personal involvement in any water related problems."  Doc. 20, p. 9.

Given the liberal treatment afforded to pro se filings, the allegation that with the exception of Counselor Reed, Corrections Defendants were advised of the water problem and failed to take corrective measures is sufficient to allege personal involvement by those officials at this stage in the proceedings.

Since this is the only argument raised by the Corrections Defendants concerning the water quality claim, it will be allowed to proceed against them with the exception of Counselor Reed.[5]

## Class Certification

Plaintiff also asserts that his matter should be entertained as a class action.  See Doc. 1, p. 4, ¶ 10.

A pro se litigant such as Harkins lacks the capacity to represent the interests of his fellow inmates in a class action. Cahn v. United States, 269 F. Supp.2d 537, 547 (D.N.J. 2003); Caputo v. Fauver, 800 F. Supp 168, 170 (D.N.J.  1992); Collinsgru v. Palmyra Board Of Education, 161 F.3d 225, 232 (3d Cir. 1998)(non-attorneys cannot litigate the rights of others); Osei-Afriye v. Medical College of Pa., 937 F.2d 876, 883 (3d Cir. 1991).

---

5.   The Court does have concerns regarding the magnitude, frequency, and duration of the water related problems.

12

It is plain error to permit a _pro se_ inmate litigant to represent fellow inmates.  <u>Whalen v. Wiley</u>, No. 06- 809, 2007 WL 433340 *2 (D. Col. Feb. 1, 2007).

However, a _pro se_ litigant seeking class certification may "continue individually to pursue his claims."  <u>Id</u>.  Simply put, a _pro se_ prisoner pursuing a civil rights claim in federal court "must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights."  <u>Id</u>.; <u>Nilsson v. Coughlin</u>, 670 F. Supp. 1186, 1190 (S.D.N.Y. 1987).

Accordingly, since a _pro se_ litigant cannot represent and protect the interests of a class fairly and adequately, Hankins' informal request that this matter proceed as a class action will be denied.  See <u>Sacaza-Jackson v. Aviles</u>, 2007 WL 38905 *3 (D.N.J. Jan. 4, 2007). An appropriate Order will enter.


RICHARD P. CONABOY
United States District Judge


DATED:   MARCH 24, 2014

13