```
            IN THE UNITED STATES DISTRICT COURT
                         FOR THE
               MIDDLE DISTRICT OF PENNSYLVANIA


ROBERT HANKINS,                    :
                                   :
           Plaintiff               :
                                   :
      v.                           :   CIVIL NO. 3:CV-12-2554
                                   :
COMMONWEALTH OF PENNSYLVANIA,      :   (Judge Conaboy)
ET AL.,                            :
                                   :
           Defendants              :
```
_____

## MEMORANDUM
## Background

Robert Hankins, an inmate presently confined at the State Correctional Institution, Camp Hill, Pennsylvania (SCI-Camp Hill), initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. By Memorandum and Order dated January 12, 2014, this Court partially granted a motion to dismiss filed by Defendants Commonwealth of Pennsylvania; the Pennsylvania Board of Probation and Parole (Parole Board); Pennsylvania Attorney General Kathleen Kane and two Parole Board employees, Parole Supervisor Burke and Parole Agent McGinnis (Commonwealth Defendants).[1]  See Doc. 31.

The Complaint also named as Defendants the following officials at Hankins' former place of incarceration, the Rockview State Correctional Institution, Bellefonte, Pennsylvania (SCI-Rockview):Superintendent Marirosa Lamas; Counselor Melissa Reed; Deputy Superintendent Jeffrey Horton; ex-Deputy Superintendent

---

1.  Plaintiff's claims that he was improperly denied parole consideration by Defendants Parole Board, Burke, and McGinnis were allowed to proceed.

1

Robert Marsh; Tim Miller; Superintendent Assistant Jeffrey Rackovan and John/Jane Doe Maintenance Department employees (Corrections Defendants).

By Memorandum and Order dated March 24, 2014, the Corrections Defendants' motion to dismiss the complaint was partially granted. See Doc. 37. Dismissal was granted in favor of Corrections Defendant Counselor Melissa Reed and with regards to the allegations of conspiracy, mishandling of coal, and denial of parole review. In addition, Plaintiff's informal request that this matter be certified as a class action was denied. However, the claim that the Remaining Corrections Defendants were deliberately indifferent to water quality related problems was allowed to proceed.[2]

Presently pending is the Remaining Corrections Defendants' motion for summary judgment. See Doc. 42. The motion is opposed.

### **Discussion**

The surviving claim asserted against the Corrections Defendants contends that the water that SCI-Rockview prisoners must use to wash and rely on "is dark and murky at times with a distinct smell." Doc. 1, p. 5, ¶ 16. Hankins adds that he is afraid to drink the water "at times" and it once caused him to vomit. Id. The Plaintiff also asserts that each of the Remaining Corrections Defendants was advised of the water purity problem.

Remaining Corrections Defendants argue that they are

---

2. The Memorandum also reiterated that the claims that Hankins was improperly denied parole consideration by Commonwealth Defendants Parole Board, Burke, and McGinnis were also proceeding.

2

entitled to entry of summary judgment with respect to Plaintiff's surviving claims against them on the basis that there is no evidence of record to support Hankins' bald allegation that the water at SCI-Rockview was unfit to drink and they have submitted irrefutable evidence to the contrary.  See Doc. 43, p. 6.

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own

3

affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

As previously discussed by this Court's March 24, 2014 Memorandum and Order, the Eighth Amendment's prohibition of cruel and unusual punishment requires prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). A condition of confinement may amount to cruel and unusual punishment if it causes "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities." Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

Courts considering a prisoner's allegations of being subjected to unconstitutional conditions of confinement must consider the duration of the complainant's exposure to the alleged

4

unconstitutional conditions and the "totality of the circumstances" when making a finding of cruel and inhumane treatment. The focus must be on the deprivation of a particular basic necessity. In Wilson v. Seiter, 501 U.S. 294, 304-05 (1991), the United States Supreme Court expalined:

> Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

An inmate must also show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298. Prison officials violate the Eighth Amendment when they act with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). This actual knowledge requirement means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Remaining Corrections Defendants argue that entry of summary judgment in their favor is appropriate because Plaintiff has only supported his unsafe water related claim with his own unsupported assertions which is insufficient in light of their evidence establishing that during the two years prior to the filing of this action water testing reports "do not evidence any problems with the water's fitness to drink." Doc. 43, p. 7. Moreover, Plaintiff's speculative contention that this was a prison wide ongoing problem is undermined by the fact that during the time period at issue "there were no mass filings of grievances pertaining to unfit water." Id.

In support of their argument, the Remaining Corrections Defendants have submitted a declaration under penalty of perjury by Scott Durst who describes himself as being the SCI-Rockview Utilities Plant Supervisor. See Doc. 45, Exhibit 1, ¶ 2. Durst states that he has a "Water License' issued by the Pennsylvania Department of Environmental Protection (DEP) which permits him to "make water process control decisions to assure that the water being produced at SCI-Rockview meets DEP standards." Id. at ¶ 3.

Plant Supervisor Durst adds that as part of his job duties he is responsible for insuring that annual drinking water testing is performed and that an Annual Drinking Water Quality Report is filed with the DEP's Bureau of Water Standards and Facility Regulation. Accompanying the declaration are copies of those reports for 2011 and 2012 which Durst states indicate that there were no water quality violations during said period at SCI-Rockview. See id. at ¶ 7.

6

Also submitted for consideration is a declaration under penalty of perjury by SCI-Rockview Superintendent's Assistant Jeffrey Rackovan who identifies himself as being responsible for the administering the prison's inmate grievance system. See id. at Exhibit 2.  Rackovan states that "[t]here has been no mass filings of grievances over water issues during the period from December 2010 to December 201." Id. at ¶ 6.  However, Rackovan acknowledges only that there were occasional inmate grievances filed regarding cloudy or dirty water which were typically submitted after a period of heavy rain or "after switching water sources from College township to the institution's Benner Reservoir, which can cause sediment in the pipes to come out." Id. at ¶ 8 .  Rackovan notes that such problems are those experienced by the outside community when similar circumstances arise.

After being granted multiple extensions of time. Plaintiff filed two opposing briefs (Docs. 57 & 580 to the pending summary judgment motion.  His first submission simply requests that the request for summary judgment be denied.  Plaintiff's second filing states the the DEP reports submitted by Durst are not compelling because they are not based upon daily, weekly or even monthly testing. See Doc. 58, p.2.  Hankins further indicates that the testing was not done when the "levels are high." Id. at p. 3. Hankins further counters that at one point in time correctional officials placed a notice in cell blocks other than the one in which he resided "his entire time" at SCI-Rockview within the prison directing prisoners to let the water run for three minutes before drinking it. Id. at p. 3.

Accompanying his opposing brief is a statement under penalty of perjury by Inmate Antwan Felder who states the during Thanksgiving week, 2012 the water in his SCI-Rockview RHU cell was dark and murky and caused him to become ill. See id. at p. 9.

Based upon an application of the well settled Eighth Amendment standards set forth above and accepting Plaintiff's contention as being true, the Plaintiff's surviving water quality claim is insufficient. Hankins has simply not presented any facts to support a contention that he was subjected to a serious deprivation of a basic human need of such duration as to rise to the level of a constitutional violation.

Rather, the Plaintiff himself indicates that the water problems were short term. See Doc. 63. Likewise the supporting declaration of Inmate Felder only references a single brief period of time where there was an issue with water quality.

There are simply no facts which could support a claim that there was a continuous persistent water quality problem within the SCI-Rockview RHU which posed a risk of serious harm as contemplated under Farmer and Wilson. There are no factual assertions which could support a claim that any of the Remaining Corrections Defendants were responsible or had knowledge of that condition. Moreover, Plaintiff has not come forth with any facts showing that any of those defendants were aware that the water quality posed a substantial risk of serious harm and responded with deliberate indifference as rerquired under Beers-Capitol.

Since it is undisputed that the water being produced in the SCI-Rockview RHU satisfied DEP standards during the relevant time period, there is no assertion of a persistent water quality

8

problem, and that the Plaintiff himself acknowledges that there was only sporadic water quality problems which only caused him illness on a single occasions, this Court agrees that the facts do not support a claim that Hankins was subjected to an unconstitutional condition of confinement.  The Remaining Corrections Defendants' summary judgment motion will be granted.  An appropriate Order will enter.

                                                    S/Richard P. Conaboy_____
                                                    RICHARD P. CONABOY
                                                    United States District Judge

DATED: March 3, 2015