IN THE UNITED STATES DISTRICT COURT
                                FOR THE
                    MIDDLE DISTRICT OF PENNSYLVANIA


ROBERT HANKINS,                    :
                                   :
        Plaintiff                  :
                                   :
    v.                             :    CIVIL NO. 3:CV-12-2554
                                   :
COMMONWEALTH OF PENNSYLVANIA,      :    (Judge Conaboy)
ET AL.,                            :
                                   :
        Defendants                 :
_____

## MEMORANDUM
### Background

Robert Hankins initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983 while confined at the Rockview State Correctional Institution, Bellefonte, Pennsylvania (SCI-Rockview). The Plaintiff is no longer incarcerated and is residing in Philadelphia, Pennsylvania.

By Memorandum and Order dated January 12, 2014, this Court partially granted a motion to dismiss filed by Defendants Commonwealth of Pennsylvania; the Pennsylvania Board of Probation and Parole (Parole Board); ex-Pennsylvania Attorney General Kathleen Kane and two Parole Board employees, Parole Supervisor Burke and Parole Agent Norma McGinnis (Commonwealth Defendants). See Doc. 31. Specifically, dismissal was entered in favor of former Attorney General Kane and the Commonwealth of Pennsylvania and with respect to the damage claims against the Parole Board. However, Plaintiff's claims that he was improperly denied parole consideration by Defendants Parole Board, Burke, and McGinnis were allowed to proceed.

1

By Memorandum and Order dated March 24, 2014, the Corrections Defendants' motion to dismiss the complaint was partially granted.[1] See Doc. 37. Dismissal was granted in favor of Counselor Melissa Reed and with regards to the allegations of conspiracy, mishandling of coal, and denial of parole review. In addition, Plaintiff's informal request that this matter be certified as a class action was denied. However, the claim that the Remaining Corrections Defendants were deliberately indifferent to water quality related problems was allowed to proceed.

By Memorandum and Order dated March 3, 2015, summary judgment was granted in favor of the remaining Corrections Defendants. Specifically, the following SCI-Rockview)officials : Superintendent Marirosa Lamas; Counselor Melissa Reed; Deputy Superintendent Jeffrey Horton; ex-Deputy Superintendent Robert Marsh; Tim Miller; Superintendent Assistant Jeffrey Rackovan and John/Jane Doe Maintenance Department employees. See Doc. 73. As a result of the prior decisions of this Court, Plaintiff's surviving claim is his contention that he was improperly denied parole consideration by Commonwealth Defendants Parole Board, Parole Supervisor Burke, and Parole Agent McGinnis.

Presently pending is a motion seeking entry of summary judgment by the Remaining Commonwealth Defendants. See Doc. 102. They also subsequently filed a suggestion of mootness. See Doc. 112. Plaintiff has opposed both filings.

---

1. The Memorandum reiterated that the claims that Hankins was improperly denied parole consideration by Commonwealth Defendants Parole Board, Burke, and McGinnis were also proceeding.

2

**Discussion**

Plaintiff's remaining claim contends that while incarcerated at SCI-Rockview in May 2011 he was told by his prison counselor that he was due to be seen by the Parole Board. See Doc. 1, p. 4, ¶ 5. However, because of his ongoing placement in the prison's Restricted Housing Unit (RHU), "[i]t was made known to Plaintiff" that he was precluded under Parole Board policy from being afforded an interview.[2] Id. at ¶ 6. Hankins challenges that alleged Parole Board policy and its implementation by the two remaining individual Defendants on the grounds that Pennsylvania state inmates held in the RHU, have a right to apply for parole upon the expiration of their minimum sentence and to have that application fairly considered. Hankins also indicates that the two remaining individual Commonwealth Defendants impeded his ability to submit the required parole application. Plaintiff seeks monetary damages as well as injunctive relief.

**Mootness**

Remaining Defendants have submitted a Suggestion of Mootnes which provides that the Plaintiff has now completed service of his maximum sentence and has been released from incarceration. They conclude that in light of the Plaintiff's release the remaining claims should be dismissed. Hankins acknowledges that he has completed service of his maximum sentence and been released from custody.

It is well recognized that the adjudicatory power of a federal court depends upon "the continuing existence of a live and

---

2. Hankins indicates that at the time he had been housed in the RHU for twelve (12) straight years. See id. at ¶ 6.

3

acute controversy." Steffel v. Thompson, 415 U.S. 452, 459 (1974) (emphasis in original). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Id. at n.10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." Rosenberg v. Meese, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)); see also Gaeta v. Gerlinski, Civil No. 3:CV-02-465, slip op. at p. 2 (M.D. Pa. May 17, 2002) (Vanaskie, C.J.).

For instance, an inmate's claim for injunctive and declaratory relief fails to present a case or controversy once the inmate has been transferred. Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted); see also Carter v. Thompson, 808 F. Supp. 1548, 1555 (M.D. Fla. 1992).

Plaintiff initiated this action when he was confined at SCI-Rockview and he sought in part injunctive relief. As previously noted, Plaintiff contends that the Remaining Defendants refused to provide him with a parole interview because he was being housed in the RHU. It is undisputed that Hankins has now completed service of his sentence and has been released and there is no indication that Plaintiff will be returned to state custody in the foreseeable future. Therefore, the Complaint to the extent that it seeks injunctive relief based upon a failure to be granted parole consideration and a parole interview is subject to dismissal on the basis of mootness.

4

Furthermore, since the damages claims against Defendant Parole Board were previously dismissed, summary judgment will be granted in favor of that Defendant.

**Summary Judgment**

The two Remaining Defendants, Burke and McGinnis, argue that they are entitled to entry of summary judgment because there is no Parole Board policy or custom that prevents RHU prisoners from seeking parole or being afforded a parole interview. Burke and McGinnis add that they did not take any action whatsoever to impede Hankins' ability to either apply or be fairly considered for parole. See Doc. 104, p. 5.

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered

evidence of asserted facts. <u>Versarge v. Township of Clinton</u>, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Id</u>. (internal quotations omitted); <u>see also</u> <u>Saldana</u>, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." <u>Celotex</u>, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" <u>Saldana</u>, 260 F.3d at 232 (quoting <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Parole Consideration**

Plaintiff contends that there was a Parole Board policy which provided that RHU inmates are not provided with the opportunity to seek parole or afforded a parole interview. Remaining Defendants counter that based upon the undisputed facts, no such policy existed and Hankins was not interviewed for parole because he never submitted a required written parole application.

Remaining Defendants acknowledge that although some Pennsylvania state inmates are automatically scheduled for parole consideration upon completion of their minimum sentence, RHU inmates are required to submit a written application under a Parole Board policy.³ They add that although Plaintiff was sent a parole application and told that to be considered for parole he needed to complete and return the application to the Parole Board, he failed to do so. It is also pointed out that parole applications were available to SCI-Rockview prisoners from the law library or via a writeen request to staff. Furthermore, the Remaining Defendants note that although there is no legal obligation to provide parole interviews, there is no Parole Board policy which precludes RHU parole applicants from having a parole interview.

The United States Supreme Court in <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 81-82 (2005) announced that in limited circumstances prisoners may challenge the constitutionality of state parole policies in § 1983 actions. Unlike the present case, in <u>Wilkinson</u>, the prisoner challenged a state parole board policy regarding halfway house placement for sex offenders.

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." <u>Greenholtz v. Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1, 7 (1979). Likewise, the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. <u>Rodgers v. Parole Agent SCI-</u>

---

3. There is no explanation offered as to why RHU prisoners are treated differently. Of course, being housed in RHU would obviously be a negative factor when assessing one's parole eligibility.

Frackville, Wech, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288, 294 (E.D. Pa. 1993); Thorpe v. Grillo, 80 Fed.Appx. 215, 2003 WL 22477890 (3d Cir. 2003)(because there is no constitutional right to parole, any substantive due process claim is foreclosed); Perry v. Vaughn, 2005 WL 736633 at *10 (E.D. Pa. March 31, 2005). However, the United States Court of Appeals for the Third Circuit has also held that:

> [E]ven if a state statute does not give rise to a liberty interest in parole release under Greenholtz, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons.

Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980).

However, relief is only available if an applicant can show that parole was arbitrarily denied based on some impermissible reason such as "race, religion, or political beliefs." " Id. at 236 n. 2.

In support of their summary judgment request, Remaining Defendants have submitted an affidavit under penalty of perjury by Defendant McGinnis, who describes herself as an eighteen (18) year Parole Board employee who served as an SCI-Rockview parole agent during the relevant time period underlying Plaintiff's claims. See Doc. 103-1, Exhibit A. She acknowledges that while some prisoners are automatically considered for parole RHU inmates, such as Hankins, had to fill out a standard written application form and send it directly to the Parole Board.

8

The Defendant adds that although she does not specifically recall the Plaintiff, RHU prisoners were able to obtain the parole application form from either the SCI-Rockview law library or via a written request slip. McGinnis avers that she did not discourage or impeded any offender from obtaining or submitting a parole application. See id. at ¶ 14. The Defendant further notes that the SCI-Rockview parole office would not receive a copy of any application form submitted by Plaintiff as it would be sent directly to the Parole Board. McGinnis concludes by stating that there is no Parole Board policy which precludes an RHU prisoner from being interviewed for parole.

Also submitted for consideration is a declaration under penalty of perjury by the Parole Board's Director of Case Management George Koontz. See id. at Exhibit B. Koontz state that based upon his review of Parole Board records there is no indication that Hankins ever sent a parole application to the Parole Board. Koontz likewise admits that RHU prisoners must submit a written application directly to the Parole Board in order to considered for parole. Finally, Koontz points out that even an informal parole application sent to the Parole Board is considered and that inmates are not denied a parole interview based on the fact that they are housed in the RHU.

In opposition, Plaintiff has provided copies of institutional grievance records pertaining to another prisoner. Those 2015 records do not concern either of the two Remaining Defendants and appear to have been generated at another state correctional facility (SCI-Huntingdon). See Doc. 110-1, pp. 6-8. The documents would support a claim that an inmate serving a term

9

of disciplinary custody at that facility is not eligible for a parole eligibility interview until he leaves disciplinary custody.[4] However, the relevance of the submission to the matter before this Court is undermined by the fact that they concern an inmate at a different correctional facility and his communications with officials who are not defendants in this matter. The documents also do not clearly establish that the denial of an interview was pursuant to a Parole Board policy but rather show only that disciplinary custody inmates at another state correctional facility were not being granted parole interviews. As such, the evidentiary submissions by Hankins do not sufficiently create an issue of disputed material facts as to whether an SCI-Rockview RHU prisoner such as Hankins is denied a parole interview under a Parole Board policy or custom.

There is no assertion that either of the two Remaining individual Defendants were responsible for creating any Parole Board policy or custom pertaining to the state wide parole eligibility treatment of RHU prisoners. See Rizzo v. Goode, 423 U.S. 362 (1976)(each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim).

Second, Hankins did not have a liberty interest in parole under Greenhotz and Rodgers. Moreover, a Pennsylvania state prisoner such as Hankins "has no right to pre-parole process" such as a parole interview. Hull v. Gillis, 2006 WL 2290412 * 10 (M.D.

---

4. The documents are nonetheless troubling given that the Pennsylvania parole statute requires mandates that an inmate parole applicant be interviewed by the Parole Board. See 61 Pa. C.S.A. § 6139(a)(6).

10

Pa. Aug. 8, 2006)(Kosik, J.).  Likewise, under Hull the fact that as an RHU prisoner Hankins was required to submit a written parole application, does not rise to the level of a constitutional violation.  There have been no facts showing that this requirement was arbitrary or based upon one of the impermissible factors outlined by Block.

Third, Plaintiff does not claim that he was denied parole consideration based on some impermissible reason such as his race, religion, ethnicity, or political beliefs as contemplated by Block.[5]  There is also no assertion that Hankins was treated differently then other similarly situated RHU prisoners.

More importantly, while Plaintiff correctly notes that he has a constitutional right to have his parole application fairly considered, there is no evidence that he even properly submitted a parole application as required under DOC policy.  See Doc. 1, ¶ IV(3).  Plaintiff at one point indicates that he was denied a parole application form by Defendant McGinnis and was not informed that he could obtain an application from the prison law library. See Doc. 110, p. 2.  However, Plaintiff later indicates that he actually submitted a parole application which was not acted upon. See id.

Based upon the undisputed record, Plaintiff had multiple means by which to obtain a parole application form.  In addition an informal application would have been accepted by the Parole Board. Any such form would not have been processed by either of the

---

5. In this vein, Plaintiff's admission that he spent twelve (12) years in the RHU would appear to be a negative factor for parole consideration.

11

Remaining Defendants. Rather, it would have been sent directly to the Parole Board. As such, Hankins' vague assertion of interference, which was not specifically raised in the complaint, lacks merit. Plaintiff has simply not come forward with any facts which support a claim that either Burke or McGinniss impeded or interfered with his initiation of a written application for parole.

## **Conclusion**

In conclusion, based upon the undisputed record, there is no basis for a claim that Defendants Burke and McGinniss impeded or prevented the Plaintiff from seeking parole. Second, the Plaintiff was not prevented from seeking release on parole or being interviewed under any Parole Board policy or custom. Third, requiring RHU prisoners to submit a written parole application does not violate due process. Furthermore, there are no facts to support a claim that Hankins was not fairly considered for parole. On the contrary, competent evidence submitted shows that he failed to file a parole application as required.

Based upon those factors the Remaining Commonwealth Defendants are entitled to entry of summary judgment. An appropriate Order will enter.

> S/Richard P. Conaboy
> Richard P. Conaboy
> United States District Judge

DATED: AUGUST 14, 2017